'FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2008 MAR 27   PM 2: 27

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORID .
FORT MYERS, FLORIDA

AARON K. MARSH,

Plaintiff,

vs.                          Case No.   2:06-cv-125-FtM-34SPC

LIBERTY  BEHAVIORAL   HEALTH   CARE,
INC.;   RICK   HARRY;   STEPHEN   A.
MARANVILLE; FNU DENNIS; FNU FLORES;
DARBY  ELLIS;   FNU  SUMMERSETT;   FNU
RAMSEY; OFFICER B. ALLEN; TIMOTHY L.
BUDZ;  FNU CHISOLM;  FNU FITZPATRICK;
GEO GROUP - FLORIDA ATLANTIC SHORES
CORPORATION; RICHARD GRANTHAM; DORIS
MATTISON;   FNU  RICKETTE;  and  MR.
THOMAS,

Defendants.

---

## OPINION AND ORDER[1]

This  matter  comes  before  the  Court  upon  review  of  the

Dispositive Motion for Summary Judgment filed on July 31, 2007,  by

Defendants Timothy J.Budz, the GEO Group, Inc., Keri Fitzpatrick,

Eugene Chisolm, Alfredo Flores, Darby Ellis, and Doris Mattison

("GEO's Motion," Doc. #62).  In support of their Motion, Defendants

attach the affidavit of Timothy J. Budz ("Budz Aff.," Doc. #63).

Defendants  additionally  submit  and  request  that  the  Court  take

judicial notice of the Order Affirming Magistrate's Judge's Report

and Recommendation With Exceptions entered in Marsh v. Bush, et

---

[1]This  is  a  "written  opinion"  under  §  205(a)(5)  of  the  E-
Government Act and therefore is available electronically. However,
it has been entered only to decide the matters addressed herein and
is not intended for official publication or to serve as precedent.

al., Case No. 00-8471-CIV-RYSKAMP/SORRENTINO (S.D. Fla. June 26, 2001) and the complaint filed by Plaintiff on June 6, 2000, in that action (the "Southern District Case," Doc. #64).    The Court previously advised Plaintiff how to respond to a motion for summary judgment and directed Plaintiff, on several occasions to file a response to GEO's Motion See Orders at Docs. #65, #69 and #71. Before Plaintiff filed a response to GEO's Motion, Defendant Liberty Behavioral Healthcare Inc. filed a Motion for Summary Judgment ("Liberty Motion," Doc. #72) adopting in its entirety Defendant Geo's Motion.   Liberty Motion at ¶4.   In its Motion, Defendant Liberty also seeks dismissal of Plaintiff's claims under 42 U.S.C. § 1915(g).   Again, the Court directed Plaintiff to file a response to GEO's and Liberty's  Motions, see Order at Doc. #77, and on September 4, 2007,  Plaintiff filed a Consolidated Response in Opposition to Defendants' Motions for Summary Judgment ("Plaintiff's Response," Doc. #78).   In support of his Response, Plaintiff attaches an October 27, 1999 Affidavit of Gregory D. Venz; separate documents entitled "General Affidavit of Statement" dated August 2, 2007, from each of the following residents, who also are civilly detained at the Florida Civil Commitment Center ("FCCC"): Samuel Stutzman, Jay Kerr, Jason Cook, Kamal Bilal, Randall Lamp, Marshall Watson, Larry Guadagnoli, Keith Head,

Emmanuel Baker (collectively the "Residents' Statements");[2] a January 1, 2001 Affidavit of Statement from Ronald Walker, which is not executed; a May 2, 2001 letter to Plaintiff from the Volunteer Lawyers' Project for the Southern District of Florida, refusing to provide legal assistance to Plaintiff in the Southern District action and attaching two articles on "Kata" ("Kata Articles"); the August 23, 2007 Affidavit of Frank Rafael Enriquez; the August 19, 2007 Affidavit of Aaron Shaw; and the May 31, 2005 Order entered in Marsh v. State of Florida, Case No. 05-21318-UNGARO-BENAGES. This matter is now ripe for review.

## I.

Plaintiff, has pending before this Court an Amended Civil Rights Complaint filed pursuant to 42 U.S.C. § 1983 ("Amended Complaint," Doc. #26). Plaintiff is civilly confined at the FCCC pursuant to the Involuntary Civil Commitment of Sexually Violent Predators' Treatment and Care Act ("Jimmy Ryce Act"), Fla. Stat. §§ 394.910-.913, and is well known to this Court having initiated 16 civil rights actions here since 2002, concerning various conditions

---

[2]With the exception of the identity of the person making the statement, the Residents Statements are essentially identical. The residents each claim they were civilly detained along with Plaintiff at the Wackenhut South Bay Civil Detainee Unit and attest to the fact that Plaintiff was permitted to practice and teach "Zen Buddhist services with the practice of Martial Arts Spiritual Enlightenment Katas" there during 2001-2003. See Residents' Statements at the 4th numbered paragraph. They further assert that they observed Plaintiff teach discipline to his Zen Buddhist community and participate in the talent show on July 5, 6, and 7, 2008. See id.

of his detention at the FCCC.  The Court takes judicial notice that
Plaintiff has filed 35 actions in federal court, and, when he was
a prisoner was deemed a three striker pursuant to 28 U.S.C. §
1915(g) by the United States District Court for the Northern
District of Florida for purposes of the Prison Litigation Reform
Act.  See Case No. 4:07cv492f-RH/AK, Order dated November 27, 2007.
Defendant Liberty, noting Plaintiff's three strike status, seeks
dismissal of the Amended Complaint on this basis, inter alia.
Liberty Motion at 2, ¶5.[3]  Because Plaintiff is currently civilly
confined he is not considered a "prisoner" for purposes of the
Prison Litigation Reform Act; and, thus is not subject to the
requirements of 28 U.S.C. § 1915(2) or § 1915(g).  See Troville v.
Venz, 303 F.3d 1256, 1260 (11th Cir. 2002).  Consequently, the
Court will deny Liberty's Motion predicated upon 28 U.S.C. §
1915(g) and proceed to the merits of the arguments raised in their
Motions.

In his Amended Complaint, Plaintiff alleges violations of the
Religious Freedom Restoration Act of 1993,[4] the First, Fourth,
Eight and Fourteenth Amendments of the United States Constitution,

---

[3]The page numbers referenced herein are to the page of the
identified document as it appears on the Court's case management
electronic computer filing system.

[4]In City of Boerne v. Flores, 521 U.S. 507, 536 (1997), the
United States Supreme Court held the Religious Freedom Restoration
Act of 1993 unconstitutional.

as well as violations of the Florida Constitution and its statutes against some 35 named Defendants ("Complaint," Doc. #26).   On December 8, 2006, the Court entered an Order of Partial Dismissal, without prejudice, that permitted Plaintiff to proceed on his Amended Complaint against only certain Defendants and only on Plaintiff's claim alleging First Amendment violations relating to the alleged denial of Plaintiff's freedom of religion (Doc. #28). See December 8, 2006, Order of Partial Dismissal and Order Directing Plaintiff to Complete Service Forms for Remaining Defendants, at 4, ¶1 and ¶3.  Additionally, the Court ordered the following paragraphs stricken from the Amended Complaint:  ¶¶4-7, 15 (page 11) and 15 (page 12).  Id. at ¶2. As of the date of this Order, service of process has not been effectuated upon the following remaining Defendants, who were previous Liberty employees: Rick Harry, Stephen A. Maranville, Mr.  Dennis, Mr. Ramsey, and Mr. Rickette. Liberty's Motion incorporates the arguments raised by Liberty as applicable to its former employees upon whom service had not yet been effectuated. Liberty Motion at 1, n. 1.  Thus, although Plaintiff re-submitted corrected service forms for these defendants, the Court in the interests of judicial economy, withheld ordering additional attempts at service in light of the pending dispositve motions before the Court.[5]

_____

[5]Additionally, service has not been effectuated upon Defendant Richard Grantham, an officer with the Florida Department of
(continued...)

The essence of Plaintiff's Complaint is that the FCCC policy that prohibits all FCCC residents from practicing martial arts such as karate, Kung Fu, Tae Kwon Do, judo, etc. infringes upon the free exercise of Plaintiff's Zen Buddhist faith. Amended Complaint at 14, ¶16. According to the Amended Complaint, Plaintiff began practicing "Nisei GoJu-Ryu Karate[6] . . . as a sport and form of spiritual enlightenment under the Zen Buddhist Religion" at fourteen years of the age. Amended Complaint at 5, ¶1. These "spiritual forms of exercises are practiced in various outdoor weather condition[s] to strengthen ones physical condition or well-being and for long period of time [sic] in mediation." Id. These "exercises" "help Plaintiff with his high blood pressure and Osteoarthritis in his right hip, knee, and both ankles, to prevent unnecessary pain and suffering . . . ." Id. Medical staff has advised Plaintiff that the "martial art exercises . . . help him with his physical illness, as well as [his] mental illness . . . ." Id. Plaintiff, who is now fifty years old, has continued performing these exercises throughout his adulthood. Id.

Since his incarceration within the Florida Department of Corrections penal system at age 24 and continuing though 1999, when

[5](...continued)
Corrections, who is referenced only in paragraph 19 of the Complaint. The Court will review the Amended Complaint regarding this Defendant as well.

[6]For purposes of clarification and consistency only, the Court will refer to Plaintiff's form of karate as "martial arts exercises" or "kata."

-6-

Plaintiff was civilly committed under the Jimmy Ryce Act, Plaintiff continued to practice GoJu-Ryu Karate. Id. at 6, ¶2. In fact, Plaintiff continued to practice "his spiritual forms of Nisei GoJu-Ryu Karate" while civilly committed at Martin Liberty Treatment Center, South Bay Civil Detainee Unit Wackenhut and the FCCC.[7] Id. It was not until November 2005,[8] that Plaintiff was prohibited from continuing his practice of GoJu-Ryu Karate. Id. at 8, ¶8. Since November 2005, Plaintiff has repeatedly been advised and warned by staff that FCCC policy prohibits residents, including Plaintiff, from practicing martial arts. Id. at 8-10. Plaintiff was told that "martial arts . . . is considered a 'serious security issue'." Id. at 9, ¶10. On January 11, 2006, Plaintiff and another resident were issued "behavior management reports" for "practicing martial arts" because it "jeopardizes the normal operations and safety of

---

[7]Contrarily, Mr. Walker's Affidavit, although not executed, states that Plaintiff was "barred" from "kata forms of exercises" at Martin Treatment Center. The Court does not deem this inconsistency, or the arguable inconsistency between the Residents' Statements and the Complaint filed by Plaintiff in the Southern District Action, crucial because whether Plaintiff was permitted to practice his martial arts exercises at prior facilities is not deemed a "material" fact to the issue before the Court.

[8]The Court takes judicial notice that Plaintiff was charged with felony battery in connection with an incident that occurred at the FCCC on July 23, 2003. In January 2004, Plaintiff was transported from the FCCC and held in the DeSoto County Jail. On October 25, 2004, Plaintiff pled no contest to the charges and was sentenced to 2 years incarceration. Due to credit for the time served while Plaintiff awaited trial on the charges, Plaintiff returned to the FCCC in November 2005. See www.desotoclerk.com, Case No. 14-2003-CF-000476.

the facility." Id. at 10, ¶12. Plaintiff met with Defendants Maranville, Norman and Ellis and explained that "martial art forms of exercises is [sic] the spiritual enlightenment practice under their faith in the Zen Buddhist religion." Id., ¶14. Defendant Maranville advised Plaintiff that he may practice the exercises "in his cell." Id. at 11, ¶14. Plaintiff contends that his cell is "too small for the movements of the kata forms of exercises." Id. As relief, Plaintiff seeks "general damages" in the amount of $500,000 per defendant; "punitive damages" in the amount of $500,000 per defendant; "compensatory damages" in the amount of $2,250,000 per defendant; "monetary damages" in the amount of $500,000 per defendant; "injunctive damages" in the amount of $500,000 per defendant; as well as various forms of injunctive and declaratory relief. Id. at 17-18.

Defendants acknowledge that martial arts is prohibited at the FCCC but contend that they are entitled to summary judgment as a matter of law because the FCCC policy at issue is reasonably related to legitimate penological interests. GEO Motion at ¶5. The policy is included in the FCCC Resident Handbook and is attached as "Exhibit A" to Defendant Budz' Affidavit. Budz Aff. at 3, ¶7. The policy is set forth under the section entitled "Other Prohibited Behavior" and in pertinent part provides:

> Residents are not allowed to engage in any of the following behavior:

> <u>Martial arts</u>: Residents are not allowed to practice
> martial arts such as karate, Kung Fu, Tae Kwon Do; judo,
> etc.,

Florida Civil Commitment Center-Resident Handbook, at 24. Defendant Budz, the Facility Director of the FCCC, explains that the "policy applies to all residents at the [FCCC] including detainees and committees." Budz Aff. at 3, ¶9. He further explains that the "the policy is in place to maintain order and security" within the facility. <u>Id.</u> at ¶10. In particular, FCCC staff determined that martial arts "poses a potential security threat to staff and other residents at the facility because it can be used as a weapon to injure others." <u>Id.</u> at ¶10. In fact, Defendants point out that Plaintiff "previously used his martial arts at the [FCCC] to injure another resident, resulting in a severe injury to that resident (i.e., broken jaw)." <u>Id.</u> at ¶12.[9]

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue at to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a

---

[9]<u>See</u> fn. 5, *supra*. While Plaintiff has explained the circumstances of this incident, he does not disagree that he used his martial arts skills and that a person was injured. <u>See</u> Plaintiff's response at 8-10.

verdict for either party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. <u>Id.</u> The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, <u>i.e.</u>, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." <u>Beard v. Banks</u>, ___ U.S. ___, 126 S.Ct. 2572, 2578 (2006)(citations omitted); <u>Celotex</u>, 477 U.S. at 322; <u>Hilburn v. Murata Electronics North America, Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. <u>Beard</u>, 126 S.Ct. at 2578 (citations omitted); <u>Shotz v. City of Plantation, Fl.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are

'implausible.'" <u>Cuesta v. School Bd. of Miami-Dade County</u>, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor, are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling in a motion for summary judgment. <u>Scott v. Harris</u> ___ U.S. ___, 127 S. Ct. 1769, 1776 (2007). In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. <u>Loren v. Sasser</u>, 309 F.3d 1296, 1301 (11th Cir. 2002).

### III.

As this is a § 1983 action, the initial inquiry must focus on the presence of two essential elements:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States.

<u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th Cir. 2001). Here, Plaintiff challenges a policy that is enforced at the FCCC, a facility established by the State of Florida to house those individuals who are civilly detained and committed pursuant to the Jimmy Ryce Act. Further, Plaintiff contends that the policy, which

prohibits residents from practicing any form of martial arts, violates his First Amendment right because it infringes upon a component of Zen Buddhism, which is his sincerely held religious belief. Consequently, liberally construing the Amended Complaint, the Court finds that Plaintiff has articulated a violation of the Free Exercise Clue of the First Amendment against persons acting under color of state law.

The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend.I.   Admittedly, the FCCC is not a prison and Plaintiff is not a prisoner.   Troville, 303 F.3d at 1260. Nonetheless, the Court takes judicial notice that the State of Florida enacted the Jimmy Ryce Act, by which a person who is determined to be a sexually violent predator[10] is required to be

---

[10]A "sexually violent predator" is defined by the Act as any person who:

> (a) has been convicted of a sexually violent offense; and
> (b) suffers from a mental abnormality or personality disorder that makes the person more likely to engage in acts of sexual violence if not confined in a secure facility for log-term control, care, and treatment.

Fla. Stat. § 394.912(10) (2002).

-12-

housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2). Further, the Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So.2d 93, 112 (Fla. 2002); see also Kansas v. Hendricks, 521 U.S. 346 (1997) (holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive).[11] The Florida legislature, in its statement of "findings and intent," explained that the Act was aimed at "a small but extremely dangerous number of sexually violent predators . . . who do not have a mental disease or defect that renders them appropriate for involuntary treatment under the Baker Act (§§ 394.451-394.4789, Fla. Stat.)." Fla. Stat. § 94.910 (2000). Thus, residents at the FCCC are considered "totally confined," and subject to certain internal regulations much like those established by the Florida Department of Corrections. See Fla. Stat. § 394.912(11).

A person who is civilly committed is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So.2d

---

[11] "Florida's Ryce Act is similar to the Kansas Sexually Violent Predator Act in many respects. See Kan. Stat. Ann. § 59-29a01-a20 (Supp. 2001)." Westerheide, 831 So.2d at 99 n.6.

1113, 1119 (Fla. 2001)(in that "the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments"). Nevertheless, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). See also Lavender v. Kearney, 206 Fed. Appx. 860, 862 (11th Cir 2006). Thus, while residents at the FCCC are subject to such internal regulations, they are due a higher standard of care than those who are criminally committed. See Id. Indeed, the Eleventh Circuit Court of Appeals has held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id.

Inmates retain the First Amendment guarantee that no law shall proscribe the free exercise of religion. Cruz v. Beto, 405 U.S. 319, 322 (1972); O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). An inmates's First Amendment rights, however, are not without restriction. Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996). In Turner v. Safley, 482 U.S. 78, 85 (1987), the United States Supreme Court formulated a test sensitive to both the

need to protect the constitutional rights of inmates and the policy of judicial restraint regarding prison regulations. Specifically, the Turner Court determined that the standard of review for evaluating a prisoner's constitutional claim should be one of reasonableness: when a prison regulation or policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. In articulating the Turner test, the Court identified several "factors that are relevant to, and that serve to channel, the reasonableness inquiry." Thornburgh v. Abbott, 490 U.S. 401, 414 (1989). These factors are: (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally;[12] and, (4) whether the regulation represents an "exaggerated response" to prison concerns. Turner, 482 U.S. at 89-91; Hakim v. Hicks, 223 F.3d 1244, 1247-48 (11th Cir. 2001). While the Eleventh Circuit has not addressed this issue, other federal

---

[12] The Court must also consider the "ripple effect" of any accommodation. See Turner, 482 U.S. at 90 ("When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.")

courts have applied the <u>Turner</u> test to analyze constitutional claims raised by individuals who, like Plaintiff, are involuntarily civilly committed.  <u>See</u> <u>Kollyns v. Watson</u>, C/A No. 3:05-2401-JFA-JRM, 2006 WL 2716426 *3 (D.S.C. 2006), <u>aff'd</u> 216 Fed. Appx. 304 (4th Cir. 2007)(applying <u>Turner</u> to Wiccan religion claim brought by civilly committed sexually violent predator, and listing cases of other courts applying <u>Turner</u> in civil commitment context).  Indeed, applying the <u>Turner</u> test in the contest of civilly committed persons, the Ninth Circuit Court of Appeal explained that such persons only "retain those First Amendment rigths not inherently inconsistent with the circumstances of their detention."  <u>Hydrick v. Hunter</u>, 500 F.3d 978, 991 (9th Cir. 2007).

To establish a free exercise claim, a plaintiff must first demonstrate that he "is sincere in his or her asserted religious beliefs." <u>Williams v. Secretary for the Department of Corrections</u>, 131 Fed. Appx. 682, 685 (quoting <u>Martinelli v. Dugger</u>, 817 F.2d 1499, 1503 (11th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1012 (1988), <u>abrogated on other grounds</u> <u>Harris v. Chapman</u>, 97 F.3d 499, (11th Cir. 1996)).  In other words, a plaintiff must be able to prove that his beliefs are religious in nature and are sincerely held. <u>Id.</u>

Here, Defendants suggest that there is no religious component to martial arts.  They refer the Court here to a decision entered in the Southern District action wherein the court denied

-16-

Plaintiff's similar claim finding that "Plaintiff had failed to establish how the practice of martial arts is related to the Buddhist religion."[13]   GEO Motion at 15.   In contrast to his previous action, Plaintiff submits articles to support his contention that there is a religious aspect to certain types of martial arts exercises. See Kata Articles, Doc. 78-2 at 24-26. Additionally, Plaintiff refers the Court to various websites in his Amended Complaint.   Amended Complaint at 5.

The Court need not make a determination whether martial arts is an essential component to Plaintiff's spiritual beliefs because the challenged FCCC policy is reasonably related to a legitimate security interest.   McCorkle v. Johnson, 881 F.2d 993, 995 (11th Cir. 1989).   Recognizing that all residents have a constitutional right to be safe while confined at the FCCC, and cognizant that the FCCC resident population has statutorily been defined as "extremely dangerous,"[14] the Court finds that the operators of the FCCC have an "obligation" to curtail potentially violent conduct. See Washington v. Harper, 494 U.S. 210, 225 (1990)(stressing that the state has not only an interest, but an obligation, to combat any danger posed by a person to himself or others, especially in an

---

[13]The Court recognizes that Plaintiff's appeal from the decision in Marsh v. Bush, et al., Case No. 00-8471-CIV-RYSKAMP/SORRENTINO (S.D. Fla. June 26, 2001) was deemed "frivolous" by the Eleventh Circuit Court of Appeals.   Marsh v. Bush, et al., No. 01-14261-E (Dec. 3, 2001).

[14]See supra at 13.

environment, which "by definition is made up of persons with a demonstrated proclivity for antisocial criminal, and often violent, conduct." (internal quotations and citations omitted)).

In the matter before the Court, it is undisputed that the policy at issue is aimed at curtailing an activity that officials deemed to be "a potential security threat to staff and other residents at the facility." Budz Aff. at ¶10.  The FCCC policy at issue is unquestionably secular in nature.  It applies to "all residents" at the FCCC.  Budz Aff. at ¶9.  Plaintiff is not otherwise prohibited from practicing any other component of his faith. Indeed, as acknowledged by Plaintiff, he is not prohibited from performing the  exercises in his "cell."  Amended Complaint at ¶14.  Plaintiff is not precluded from engaging in a "long period of time in mediation."  Id. at ¶1.  Certainly the regulation cannot be deemed an exaggerated response because it is undisputed that Plaintiff previously injured another person using his martial arts skills. Budz Aff. ¶¶11-12; fn. 5, *supra*; Plaintiff's Consolidated Response, Doc. #78 at 8.  Based upon the record and for the reasons set forth above, the Court finds that Defendants are entitled to summary judgment on Plaintiff's First Amendment claims stemming from the FCCC's regulation prohibiting the practice of martial arts.

Notwithstanding that the Court finds no First Amendment violation concerning the FCCC regulation prohibiting the practice

of martial arts, Plaintiff in paragraphs 11, 13 and 14 identifies
certain actions by FCCC staff that appear to prohibit his ability
to otherwise participate in group Zen Buddhist "mediation" or
possess a "Zufu (towel or pillow) for sitting mediation and Zagu
(Buddhist or Martial Art garment)." Amended Complaint at ¶16.
With regard to paragraph 11, Plaintiff does not identify who
"cancelled" the mediation group class. Although Plaintiff
identifies Defendant Chisolm as the individual who confiscated his
religious garment, books and towel, and took down the sign for the
mediation class, see id. at ¶¶ 13 and 16, Plaintiff does not
articulate how these actions substantially burdened his ability to
practice his Zen Buddhist faith. Moreover, Plaintiff does not
allege, nor even suggest, that these actions placed a substantial
burden on his ability to otherwise practice his chosen faith.
Thornburgh v. Abbott, 490 U.S. 401, 418 (1989). Thus, the Court
will dismiss these claims without prejudice. Plaintiff may initiate
a new action with respect to these claims, if appropriate.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Dispositve Motion for Summary Judgment by Defendants
Timothy J,. Budz, the GEO Group, Inc., Keri Fitzpatrick, Eugene
Chisolm, Alfredo Flores, Darby Ellis, and Doris Mattison (Doc. #62)
is **GRANTED to the extent that the Court finds no First Amendment**

violation stemming from the FCCC regulation prohibiting the practice of martial arts.

2.    Defendant Liberty Behavioral Healthcare Inc.'s Motion for Summary Judgment (Doc. #72) is **DENIED to the extent** that it seeks dismissal pursuant to 42 U.S.C. §1915(g). In all other respects, Liberty's Motion is **GRANTED as set forth above.**

3.    Plaintiff is not barred from bringing an action alleging that his rights to practice his Zen Buddhist faith is otherwise burdened.

4.    The **Clerk of Court** shall: 1) enter judgment pursuant to the December 8, 2006, Order of Partial Dismissal; 2) enter judgment as set forth above; 3) terminate any pending motions; and 4) close this file.

DONE AND ORDERED in Fort Myers, Florida, on this 27th day of March, 2008.

MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE

SA: hmk
Copies: All Parties of Record

-20-